UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD UNDERWRITERS
INSURANCE COMPANY, TWIN
CITY FIRE INSURANCE
COMPANY, HARTFORD FIRE
INSURANCE COMPANY, PROPERTY
AND CASUALTY INSURANCE
COMPANY OF HARTFORD,
TRUMBULL INSURANCE COMPANY
And HARTFORD CASUALTY
INSURANCE COMPANY,

    Plaintiffs,                                  Case No. 2:18-cv-12907
                                                  District Judge Nancy G. Edmunds
v.                                                   Magistrate Judge Kimberly G. Altman

OMEGA RESOURCE SOLUTIONS,
LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION
UNDER FED. R. CIV. P. 69 FOR POST-JUDGMENT DISCOVERY,
EXECUTION OF JUDGMENT, AND TO PIERCE THE CORPORATE
VEIL OF OMEGA RESOURCE SOLUTIONS, LLC (ECF No. 27)**

I.    Introduction

This is a post-judgment motion brought to pierce the corporate veil of

defendant and hold non-party David Otto personally liable for the judgment

entered against defendant. Plaintiffs bring this motion under Fed. R. Civ. P. 69 for

1

post-judgment discovery, execution of judgment, and to pierce the corporate veil of defendant. The motion was referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is recommended that plaintiffs' motion (ECF No. 27) be DENIED.

## II. Background

### A. History of the Case

On September 17, 2018, plaintiffs filed a complaint alleging that defendant breached a workers compensation insurance policy issued by plaintiffs. (ECF No. 1, PageID.2). "[Defendant] [was] in the business of providing merchandising and product demonstration services on a nationwide basis." (ECF No. 1, PageID.3). Plaintiffs provided defendant with workers compensation insurance coverage for all of its employees. (*Id*., PageID.3-4). After an audit, plaintiffs discovered that defendant owed additional insurance premiums in the sum of $1,374,967. (ECF No. 1, PageID.5).

On February 1, 2019, plaintiffs filed a motion for default judgment. (ECF No. 7). While defendant did have an attorney file an answer on its behalf, the attorney later withdrew because defendant went out of business and thus was unable to pay the attorney. (ECF Nos. 4, 6). Accordingly, plaintiffs argued that

default judgment was appropriate. *See* ECF No. 7. They also argued that defendant's answer should be stricken because a decision of the Department of Insurance and Financial Services resolving defendant's claims concerning the audit had a preclusive effect. (ECF No. 7, PageID.139-140).

On May 20, 2019, the Court held a hearing on plaintiffs' motion for default judgment, and defendant failed to appear. The Court entered an order striking defendant's answer and granting plaintiffs' motion for default judgment. (ECF No. 13). Also on May 20, 2019, the Court entered a default judgment in favor of plaintiffs and against defendant in the sum of $1,409,814 for unpaid workers compensation insurance premiums. (ECF No. 14, PageID.298).

Plaintiffs were unable to recover the $1,409,814 awarded to them from defendant so they filed the instant motion to collect the money from Otto. *See* ECF No. 27. Plaintiffs learned through post-judgment discovery that Otto was the sole owner and member of defendant and plaintiffs allege that he transferred collected workers compensation premiums from defendant to another entity wholly owned and controlled by him called America's Back Office Midwest. (ECF No. 27, PageID.337).

B. Post-Judgment Discovery

Plaintiffs conducted some post-judgment discovery in this case which they say revealed the following. Anthony Sabatella is the director of risk management for America's Back Office and Otto's son. (ECF No. 27-4, PageID.387; ECF No. 32-2, PageID.441-442). America's Back Office is owned by Otto. (ECF No. 27-4, PageID.392).

At some point, Otto requested that Sabatella purchase defendant on behalf of America's Back Office, and Sabatella did so on January 1, 2014. (*Id.*, PageID.389-390; ECF No. 32-5). Sabatella was a member of defendant in 2014 and 2015, yet he did not receive any remuneration from defendant's business activities. (ECF No. 27-4, PageID.391). Money that defendant earned was spent on management fees. (*Id.*, PageID.391). On January 10, 2018, Otto purchased defendant from Sabatella in order "to consolidate everything under [him]." (ECF No. 32-2, PageID.443, 450). At that point, Otto became "the sole member of the entity[.]" (*Id.*, PageID.446).

Michael Zybura is the director of finance of America's Back Office. (ECF No. 27-3, PageID.366-367). Zybura is responsible for accounting, finance, and taxes for all of the entities owned by Otto.[1] (*Id.*). One of those entities was

---

[1] Zybura believed that Otto owned at least 16 companies. (ECF No. 27-3, PageID.368-369). Sabatella indicated that there were 123 different businesses associated with Otto. (ECF No. 27-4, PageID.392).

defendant. (*Id.*, PageID.367). America's Back Office and defendant had oral, but no written, contracts together. (ECF No. 32-3, PageID.459).

Zybura indicated that "they"[2] collected $460,956 in workers compensation premiums from clients that were not then remitted to the workers compensation carriers. (ECF No. 27-3, PageID.374-375). Otto made the decision not to remit the premiums. (*Id.*, PageID.375). Other workers compensation premiums in the amounts of $20,000 and $110,000 were also collected but not remitted. (*Id.*, PageID.375-376). These sums were taken from defendant and paid into other companies owned by Otto. (*Id.*, PageID.376). Overall, it appeared that defendant billed its clients $1,662,251 for workers compensation premiums, but the majority of that money was sent to a management company owned by Otto, rather than to the workers compensation carriers. (*Id.*, PageID.381-382).

Otto claimed that at the time defendant was in operation, it owned no real estate and did not have any investments. (ECF No. 27-5, PageID.399-400). Defendant also did not have any assets. (*Id.*, PageID.403). Defendant's bank accounts were closed on April 5, 2018. (ECF No. 32-6, PageID.480). Otto refused to answer questions regarding his personal assets. (ECF No. 27-5, PageID.398-404).

---

[2] It is not entirely clear who the "they" that Zybura refers to is.

### III. Analysis

#### A. Procedural Issues

##### 1. Liability Argument

As an initial matter, despite the fact that defendant never defended itself prior to entry of the default judgment, Otto, through his post-judgment papers, now appears to want to litigate the underlying issues that were resolved by the default judgment. For example, in his response to plaintiffs' post-judgment motion brought to pierce the corporate veil of defendant and hold Otto personally liable for the judgment entered against defendant, he alleges plaintiffs drove defendant out of business and that defendant paid all workers compensation premiums owed to plaintiffs. (ECF No. 32, PageID.423-427). These arguments are irrelevant and attempt to undermine the default judgment. At issue is solely whether plaintiffs can pierce the corporate veil and hold Otto personally liable for the default judgment entered against defendant.

##### 2. Piercing the Corporate Veil by Motion

Plaintiffs are moving under Fed. R. Civ. P. 69(a) in order to pierce the corporate veil of defendant as well as for post-judgment discovery relating to Otto personally.[3] Fed. R. Civ. P. 69(a) provides:

> (1) Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.
>
> (2) Obtaining Discovery. In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

The motion also relies upon MCL 600.6104(5), which provides that after a money judgment has been rendered a judge may "[m]ake any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor."

Plaintiffs rely on *Gallagher v. Persha*, 891 N.W.2d 505 (Mich. Ct. App. 2016), to support their assertion that, by way of a motion under Fed. R. Civ. P. 69(a), they can pursue an individual judgment against Otto because they have

---

[3] Plaintiffs seek additional "post-judgment discovery against David Otto personally and any business in which he may have an interest, membership, or any form of ownership, together with all personal assets[.]" (ECF No. 27, PageID.329).

already secured a default judgment against defendant. However, *Gallagher* does not support plaintiffs' position.

In *Gallagher*, the Michigan Court of Appeals considered two appeals both of which stemmed from 2012 and 2014 lawsuits concerning the purchase of a house. *Gallagher*, 891 N.W.2d at 507. In the first lawsuit, Edward and Joan Gallagher, sued Kaper Properties, Inc. (Kaper) for breach of contract and Kathleen Persha, Kaper's president and sole shareholder, for breach of fiduciary duty. *Id*. "Defendants denied that Persha was ever a party to the purchase agreement, or that Kaper was obligated under the purchase agreement to pay off the existing mortgages by a certain date." *Id*. The trial court dismissed the Gallaghers' breach of fiduciary claim because it was time barred under the statute of limitations. *Id*. The Gallaghers then "filed an amended complaint, adding two additional claims against both defendants: one for fraud and misrepresentation and one titled 'piercing the corporate veil.' " *Id*. The case went before a case evaluation panel, which "recommended an award of $290,000 to plaintiffs for the three remaining claims, against defendants jointly and severally." *Id*. The Gallaghers and Kaper accepted the award, but Persha did not. *Id*. The trial court entered a judgment in the amount of $283,110.88 against Kaper and "the parties stipulated to dismissal of [the Gallaghers'] remaining claims against Persha, without prejudice." *Id*.

In the second lawsuit, the Gallaghers filed a three-count complaint against Persha, one of the counts involved piercing Kaper's corporate veil to hold Persha liable "based on the facts presented in the 2012 case." *Id*. at 508. The trial court dismissed the two claims not involving piercing the corporate veil and then "dismissed the veil-piercing claim because it was no longer supported by an underlying cause of action." *Id*. The trial court, however, "suggested that [the Gallaghers] might be able to bring a veil-piercing claim based on a cause of action raised in the 2012 case[.]" *Id*.

On the basis of the trial court's suggestion in the second lawsuit, the Gallaghers "filed a motion to reinstate the 2012 case against Persha only, asking the trial court to reopen the prior lawsuit to enable them to pierce Kaper's corporate veil and hold Persha individually responsible for Kaper's judgment." *Id*. "The trial court denied [the Gallaghers'] motion, explaining that it would not entertain the veil-piercing claim without an underlying cause of action because, under Michigan law, 'there is no independent cause of action for a claim for piercing the corporate veil.' " *Id*. After striking out in both trial courts, the Gallaghers appealed both cases in their attempt to pierce Kaper's corporate veil and hold Persha liable for the money judgment entered against Kaper.

Accordingly, the key issue in *Gallagher* was "how a judgment-plaintiff procedurally pursues the piercing remedy once it is established that the corporate

9

entity cannot pay the judgment, and there is some evidence or reason to believe that the corporate form has been abused to avoid legal obligations." *Id.* at 509. The Michigan Court of Appeals noted that "supplementary proceedings under MCR 2.621 and MCL 600.6104(5) cannot be utilized" because of the court's holding in an earlier case called *Green v. Ziegelman*, 767 N.W.2d 660, 665 (Mich. Ct. App. 2009). *Id*. at 509. As such, after examining cases from other states, the court "[held] that plaintiffs were entitled to *bring a new action* in an attempt to enforce the prior Kasper judgment against Persha." *Id.* at 513 (emphasis added).

The Michigan Court of Appeals also stated in *Gallagher* that "when a judgment already exists against a corporate entity, an additional cause of action is not needed to impose liability against a shareholder or officer if a court finds the necessary facts to pierce the corporate veil." *Id*. at 515. Plaintiffs rely on this statement to assert that they can bring a motion under Rule 69(a) premised on MCL 600.6104(5) in a case where Otto is not a named party. Despite plaintiffs' assertion to the contrary, they cannot do so. Instead, *Gallagher* says that that "a court may entertain an action to pierce a judgment debtor's veil without any *additional underlying, substantive* cause of action against the shareholder [Otto]."

*Avant Cap. Partners, LLC v. Strathmore Dev. Co. Mich., LLC*, 703 F. App'x 362, 372 (6th Cir. 2017).[4]

The Sixth Circuit considered *Gallagher* in *Avant*. *Avant* procedurally began in Connecticut where the plaintiff, Avant, obtained a money judgment against the defendant, Strathmore, in federal court. *Id*. at 363. "Avant then registered that judgment in the United States District Court for the Western District of Michigan and requested various writs of execution from that court as Avant attempted, unsuccessfully, to collect its judgment debt from Strathmore." *Id*. During post-judgment discovery, Avant learned "that various payments meant for Strathmore were being diverted [to Terra]." *Id*. at 363-365. Strathmore is a "wholly owned subsidiary" of Terra. *Id*. at 363.

Upon learning that payments meant for Strathmore were being diverted to Terra, Avant "filed a 'Motion to Supplement Judgment,' pursuant to Federal Rule of Civil Procedure 69(a)(1)," and requested, among other things, "that Terra be added to Strathmore's judgment as a judgment debtor." *Id*. at 365. "Inexplicably, Avant neither served Terra with the motion nor sought to add Terra as a party to its enforcement action." *Id*. Over Strathmore's objection, and despite the fact that

---

[4] The undersigned requested supplemental briefing from both parties to address the case *Avant Cap. Partners, LLC v. Strathmore Dev. Co. Mich., LLC*, 703 F. App'x 362, 372 (6th Cir. 2017). *See* ECF No. 40.

11

Terra was not a party to either the first lawsuit or the enforcement action, "the district court granted post-judgment relief against Terra to help Avant collect its money judgment." *Id*.

The Sixth Circuit "reverse[d] he district court as to the relief it granted in paragraph two of its order[5] because under applicable Michigan law, Avant may bring a *claim* against Terra to join it as a judgment debtor to Strathmore's debt (that is, to pierce Strathmore's veil and hold its parent, Terra, liable for Strathmore's debt), but the district court erred in so joining Terra to Strathmore's debt in the absence of such a veil-piercing claim." *Id*. at 367. The Sixth Circuit relied on *Green v. Ziegelman*, stating that in *Green*, "the Michigan Court of Appeals has held, in a case fairly similar to this one, that Michigan courts' post-judgment enforcement powers under Mich. Comp. Laws § 600.6104 *do not* allow a court to pierce a judgment debtor's veil in order to enter a judgment against the debtor's shareholder 'where there was no underlying arbitration award or judgment to that effect.' " *Id*. at 370 (quoting *Green*, 767 N.W.2d at 665). Ultimately, the Sixth Circuit determined that Avant could bring a claim against the parent company, Terra, to join it as a judgment debtor to the debt of the defendant,

---

[5] Paragraph two of the district court's order stated: "Terra Holdings, L.L.C. a/k/a Terra Holdings Operating, the sole member of [Strathmore], is added as a judgment-debtor to the Judgment and shall be jointly and severally liable for all sums due and owing under the Judgment as if an original party to the Judgment[.]"

12

Strathmore, but that the district court erred when it held Terra liable for Strathmore's debt in the absence of a separate claim. *Id*. at 367.

Plaintiffs attempt to distinguish *Avant* because it involves holding a parent company liable, rather than an individual such as Otto who was the sole owner of the company at issue. Plaintiffs also say that unlike in *Avant*, the party they seek to hold liable "has vigorously participated in motion practice, has himself been deposed, has received all filings, has been represented by counsel, and has had full due process to argue his position." (ECF No. 42, PageID.550). However, while Otto has participated in post-judgment proceedings, so had Terra in *Avant*. Further, any participation prior to entry of the default judgment was not done by Otto, but by defendant.

Furthermore, as noted above, *Avant* relied on the Michigan Court of Appeals' decision in *Green* in addition to *Gallagher*. In *Green*, the trial court entered a $156,313 judgment against Norman H. Ziegelman individually for breach of contract. *Green*, 767 N.W.2d at 662. "Ziegelman's liability for the breach was determined post[-]judgment through proceedings supplementary to the initial judgment, and liability was predicated on an alter ego theory, with the court piercing the corporate veil of a corporation owned by Ziegelman. The initial judgment on the claim for breach of the architectural agreement, which judgment

13

was founded on an arbitration award, was entered solely against defendant Norman H. Ziegelman Architects, Inc. (NZA)." *Id*.

Ultimately, the Michigan Court of Appeals reversed the circuit court judgment holding Ziegelman liable because "neither MCR 2.621 nor the [Proceedings Supplementary to Judgment Act] gave the circuit court authority to pierce NZA's corporate veil and to hold Ziegelman, NZA's sole shareholder, personally liable." *Id*. at 667-668. The *Green* court explained that "[t]he circuit court essentially used a proceeding supplementary to judgment to enter an additional judgment against a party not previously subject to a judgment on the claim at issue," which was not permissible under the Michigan Court Rules or Proceedings Supplementary to Judgment Act. *Id*. at 667. *Green*, thus, directly addresses whether a court can pierce the corporate veil in order to hold a sole shareholder who was not a party to the original proceeding, like Otto, liable through a post-judgment motion. *Green* says the answer is no. Accordingly, under Michigan law, plaintiffs cannot pierce the corporate veil in order to hold Otto personally liable without first bringing a claim against him or joining him to the current action.

Plaintiffs raise two additional issues in their supplemental brief: (1) they request to join Otto as a party to this action and (2) they argue "MCR 3.101(G)(1)(h) and (i) further allow piercing the corporate veil to reach the assets

14

of an entity not otherwise liable on the original judgment." (ECF No. 42, PageID.548, 551-552). Plaintiffs do not properly raise either of these issues as they are mentioned for the first time in a supplemental brief. "Just as a new issue may not be raised for the first time in a reply brief, *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003), the same is true for a new issue raised in supplemental briefing." *Scott v. First American Title Ins. Co.*, 276 F.R.D. 471, 480 (E.D. Ky. 2011). Moreover, the purpose of the supplemental brief was for the parties to address the holding in *Avant*. Should plaintiffs wish to join Otto as a party or hold him liable as a garnishee under MCR 3.101(G)(1)(h) and (i), they need to separately move for such relief, in accordance with *Gallagher*, *Green*, and *Avant*.

## B. Piercing the Corporate Veil

Although the undersigned concludes that plaintiffs cannot hold Otto personally liable without first bringing a separate action or joining him to the current action, the undersigned will briefly examine the merits of the piercing the corporate veil claim below for the purpose of completeness.

In order to impose liability against Otto, plaintiffs must provide the facts necessary to pierce the corporate veil. "Michigan law presumes that the corporate form will be respected." *EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493,

499 (6th Cir. 2021). " 'This presumption, often referred to as a "corporate veil," may be pierced only where an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy.' " *Id*. (quoting *Seasword v. Hilti*, 537 N.W.2d 221, 224 (1995)). "Piercing the corporate veil is an equitable remedy 'sparingly invoked to cure certain injustices that would otherwise go unredressed.' " *EPLET, LLC*, 984 F.3d at 499 (quoting *Gallagher*, 891 N.W.2d at 509).

"Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *EPLET, LLC*, 984 F.3d at 499 (quotation marks and citations omitted). "Regarding the second element . . . Michigan courts have held that a breach of contract can be the kind of wrong that justifies piercing a corporate veil if the corporate form has been abused." *Id*.

First, plaintiffs appear to have established that defendant was a mere instrumentality of Otto. Defendant collected $1,662,251 from its clients for workers compensation premiums, but the majority of that money was sent to a management company owned by Otto, rather than to the workers compensation carriers, here plaintiffs. Second, defendant breached the contract it had with plaintiffs for workers compensation insurance. The result of that breach of

16

contract was the default judgment awarding damages in the amount of $1,409,814. Third, plaintiffs have suffered a loss of $1,409,814. If plaintiffs are unable to hold Otto personally liable for that sum, plaintiffs would be unable to recoup the money they lost because it seems that Otto has removed all assets from defendant. By directing Zybura to send the money collected from clients for workers compensation premiums to a management company owned by Otto, rather than remit those premiums to plaintiffs, Otto exercised its control over defendant in a way that wronged plaintiffs. Under these circumstances, Michigan law would appear to allow plaintiffs to pierce defendant's corporate veil and seek damages from Otto. *See id*.

However, as explained above, in order to obtain the relief they seek, plaintiffs must either file a new action against Otto or file a motion seeking to join him in this action.

## IV. Conclusion

For the reasons set forth above, it is RECOMMENDED that plaintiffs' motion be DENIED.

Dated: May 21, 2021             s/Kimberly G. Altman  
Detroit, Michigan            KIMBERLY G. ALTMAN  
           United States Magistrate Judge

# NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 21, 2021.

                                                      s/Marie E. Verlinde
                                                     MARIE E. VERLINDE
                                                     Case Manager